STATE of Oklahoma ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,

v.

Stephen LIVSHEE, Respondent.

SCBD No. 3939.

OBAD No. 1120.

Supreme Court of Oklahoma.

Jan. 25, 1994.

Dan Murdock, Gen. Counsel, Oklahoma Bar Ass'n, Oklahoma City, for complainant.

O. Christopher Meyers, Lawton, for respondent.

OPALA, Justice.

In this disciplinary proceeding against a lawyer the issues to be decided are: (1) Does the respondent's federal-court conviction of willful failure to file an income tax return demonstrate his unfitness to practice law? and if so, (2) Does our *de novo* examination of the proceedings held before the Professional Responsibility Tribunal [PRT] incline us to the view that suspension from practice during the time interval between the entry of this court's post-conviction order of interim suspension and the effective date of this pronouncement would constitute a fit sanction to be imposed in this case? We answer both questions in the affirmative.

## I

### THE ANATOMY OF LITIGATION

██ Stephen Livshee [Respondent or Livshee] pleaded guilty in the United States District Court for the Western District of Oklahoma to one count of willful failure to file an income tax return for 1990, a misdemeanor under the provisions of 26 U.S.C. § 7203,[1] and was placed on probation for a

---

1. The terms of 26 U.S.C. § 7203 provide in pertinent part:

    "Any person required under this title to pay any estimated tax or required by this title or by regulations made under authority thereof to make a return ... who willfully fails to pay such estimated tax or tax, [or] make such return ... at the time or times required by law or regulations, shall, in addition to other penalties provided by law, be guilty of a misdemeanor and, upon conviction thereof, shall be fined not more than $10,000, or imprisoned not more than 1 year, or both, together with the costs of prosecution."

period of two years.[2]  Acting in conformity to Rule 7.3 [3] this court suspended Livshee from the practice of law by its order of September 13, 1993 and directed him to show cause (a) why the post-conviction order of interim suspension should be set aside and (b) a final order of discipline should not be entered. Livshee was then afforded an opportunity to tender the facts and circumstances in mitigation of the professional discipline to be imposed in an adversary hearing authorized by Rule 7.4.[4]  By the terms of Rules 7.1 [5] and 7.2 [6] a conviction rendering one unfit to practice law constitutes conclusive proof of the commission of the offense.  In a post-conviction disciplinary hearing facts that gave rise to the criminal charge, which resulted in respondent's conviction, cannot be relitigated.  The range of permissible inquiry stands *confined to issues that are germane to mitigation or severity of the bar disciplinary sanction* which is to be visited upon the respondent.

A trial panel of the PRT found on October 28, 1993 that: (1) Livshee had pled guilty to a federal misdemeanor offense of failing to file an income tax return; (2) *the conviction did not "appear to demonstrate his unfitness to practice law"* and (3) Livshee's acts which resulted in his conviction did not show "deception and dishonesty."  Concluding that Livshee was "guilty of a lack of good moral character and respect for the law," the PRT recommended that he be suspended from the practice of law for a period of 60 days, to run from this court's September 13th post-conviction order of interim suspension.

**2.**  United States v. Stephen Livshee, Cause No. CR–93–058L, U.S. District Court for the Western District of Oklahoma.

**3.**  The terms of Rule 7.3, Rules Governing Disciplinary Proceedings, 5 O.S.1991, Ch. 1, App. 1–A, are:

"Upon receipt of the certified copies of such indictment or information and the judgment and sentence, the Supreme Court shall by order *immediately suspend the lawyer* from the practice of law until further order of the Court. In its order of suspension the Court shall direct the lawyer to appear at a time certain, to show cause, if any he has, why the order of suspension should be set aside.  Upon good cause shown, the Court may set aside its order of suspension when it appears to be in the interest of justice to do so, due regard being had to maintaining the integrity of and confidence in the profession."  (Emphasis added.)

**4.**  The terms of Rule 7.4, Rules Governing Disciplinary Proceedings, 5 O.S.1991, Ch. 1., App. 1–A, are:

"If the *conviction becomes final* without appeal, the General Counsel of the Oklahoma Bar Association shall inform the Chief Justice and the Court shall order the lawyer, within such time as the Court shall fix in the order, to show cause in writing why a final order of discipline should not be made.  The written return of the lawyer shall be verified and *expressly state whether a hearing is desired.*  The lawyer may in the interest of explaining his conduct or by way of mitigating the discipline to be imposed upon him, submit a brief and/or any evidence tending to mitigate the severity of discipline.

The General Counsel may respond by submission of a brief and/or any evidence supporting his recommendation of discipline."  (Emphasis added.)

**5.**  The terms of Rule 7.1, Rules Governing Disciplinary Proceedings, 5 O.S.1991, Ch. 1, App. 1–A, are:

"A *lawyer who has been convicted* in any jurisdiction of a crime *which demonstrates such lawyer's unfitness to practice law,* regardless of whether the conviction resulted from a plea of guilty or nolo contendere or from a verdict after trial, shall be subject to discipline as herein provided, regardless of the pendency of an appeal."  (Emphasis added.)

**6.**  The terms of Rule 7.2, Rules Governing Disciplinary Proceedings, 5 O.S.1991, Ch. 1, App. 1–A, are:

"The clerk of any court within this state in which a lawyer is convicted shall transmit certified copies of the indictment or information and judgment and sentence of conviction to the Chief Justice of the Supreme Court and to the General Counsel of the Oklahoma Bar Association within five (5) days after said conviction.  The documents may also be furnished to the Chief Justice by the General Counsel. *Such documents,* whether from this jurisdiction or any other jurisdiction, *shall constitute the charge and be conclusive evidence of the commission of the crime* upon which the judgment and sentence is based *and shall suffice as the basis for discipline* in accordance with these rules."  (Emphasis added.)

## II

## IN POST–CONVICTION BAR DISCIPLINARY CASES THIS COURT MUST GIVE *DE NOVO* CONSIDERATION TO RESPONDENT'S CONTINUED FITNESS TO PRACTICE LAW

■ In a post-conviction disciplinary proceeding this court will examine the entire record tendered in the case and, *if it is found complete,*[7] will consider *de novo* the respondent's continued fitness to practice law.[8] The task before us today is to be distinguished from *two other* remedial notions with which it may easily be confused: (a) *de novo appellate* review on the record and (b) a trial *de novo.* The latter denotes a *retrial of an entire case before a different tribunal,* with *all* litigable issues standing as though they had never been resolved before.[9] The former—*de novo appellate* review on the record—requires an *independent, non-deferential re-examination* of *another tribunal's record and findings.*[10]

■ The distinction between our *de novo* consideration that is every lawyer's constitutional due and the other two forms of corrective process *is critical.* It is mandated by this court's unique, constitutionally invested status as a tribunal that exercises exclusive, original and nondelegable cognizance over legal practitioners and over the regulation of the practice of law.[11] *Every aspect of a disciplinary inquiry before any Oklahoma Bar Association's [Bar] authority, from beginning to end, falls under that jurisdictional rubric.*[12] Since this power cannot be *shared* with any other institution,[13] *the entire process* must be given our *de novo* consideration.[14] Stated another way, since the findings of fact made by the PRT are neither binding nor persuasive, and do not constitute *another tribunal's decision, it is this court's duty to pass on the sufficiency and weight of the evidence as a tribunal of first instance with original and exclusive cognizance of the case.*

### *The Parties' Stipulations*

At the outset of the PRT hearing the Bar and Livshee stipulated that no disciplinary action had ever been taken against Livshee. The parties later filed here a *joint* brief in support of the PRT report and of that body's recommendation for a 60–day suspension. According to that brief (which is in the na-

---

7. Although the proof to be reviewed is *never* to be deemed *settled beyond this court's power to order that it be expanded,* no additional evidence is needed for today's review. *See Application of Sanger,* Okl., 865 P.2d 338 (1993).

8. *See Willner v. Committee on Character and Fitness,* 373 U.S. 96, 83 S.Ct. 1175, 10 L.Ed.2d 224 (1963); *State v. Carpenter,* Okl., 863 P.2d 1123, 1129 (1993); *Appeal of Evinger,* Okl., 629 P.2d 363, 368 (1981); *State v. Trower,* Okl., 381 P.2d 142, 144 (1963); *see also Sanger, supra* note 7 at 343.

9. *See Shelton v. Lambert,* Okl., 399 P.2d 467, 470 (1965); *see also Globe–Union, Inc. v. Chicago Telephone Supply Co.,* 103 F.2d 722, 728 (7th Cir.1939).

10. *Brown v. Burkett,* Okl., 755 P.2d 650, 651 (1988); *Globe–Union, supra* note 9 at 728; *Niehaus v. Madden,* 348 Mo. 770, 155 S.W.2d 141, 145 (1941); *see also* Art. 9 § 20, Okl. Const.; *Atchison, Topeka & Santa Fe Ry. Co. v. State,* Okl., 692 P.2d 554, 555–556 (1984).

The pertinent provisions of Art. 9 § 20, Okl. Const., are:

"The Supreme Court's review of appealable orders of the Corporation Commission shall be judicial only, and *in all appeals involving in [sic] asserted violation of any right of the parties under the Constitution of the United States or the Constitution of the State of Oklahoma, the Court shall exercise its own independent judgment as to both the law and the facts. * * *"* [Emphasis supplied.]

11. *See In re Integration of State Bar of Oklahoma,* 185 Okl. 505, 95 P.2d 113 (1939) (the court's syllabus); *Tweedy v. Oklahoma Bar Ass'n,* Okl., 624 P.2d 1049, 1052 (1981); *State ex rel. Okl. Bar Ass'n v. Raskin,* Okl., 642 P.2d 262, 265–266 (1982). *See also* the discussion in *State ex rel. Oklahoma Bar Ass'n v. Perceful,* Okl., 796 P.2d 627, 631 (1990) (Opala, J., dissenting); *Sanger, supra* note 7 at 343.

12. *See* the authorities cited *supra* note 11. This applies as well to those who seek bar admission. *Sanger, supra* note 7 at 343.

13. *Delegata potestas non potest delegari*—delegated power may not be redelegated. *American Home Products Corporation v. Homsey,* Okl., 361 P.2d 297, 301–302 (1961).

14. *Sanger, supra* note 7 at 343; *Application of Mailath,* Okl., 752 P.2d 803, 806 (1988).

ture of a stipulation), the crime of which Livshee was convicted "demonstrates his unfitness to practice law." [15] The brief *concedes* that this stipulation, *although contrary to one explicit PRT finding*, is consistent with another made in the report under consideration—i.e., that Livshee is "guilty of a lack of good moral character and respect for the law."

■ Forensic (in-court) [16] stipulations are solemn admissions which are subject to the approval of the court in which they are entered. No party may impose a stipulation on an unwilling court. Unless the court, upon request, finds a tenable legal ground for relieving one or all parties from the legal effect of their stipulation, judicial admissions tendered in this form are generally binding and conclusive upon the parties as well as on the court.[17] When a stipulation is offered to this court in a bar disciplinary proceeding, it is incumbent upon us to determine if it accords with the applicable law and with the record in the case. If so, the stipulation will be approved and its legal effect imposed on the parties. For the reasons to be explained in Part III, *infra*, we approve the stipulation that Livshee's conviction demonstrates his lack of fitness for the practice of law.

## III

## THE CONSEQUENCES OF A LAWYER'S CONVICTION FOR WILLFUL FAILURE TO FILE AN INCOME TAX RETURN

■ A lawyer's conviction (that is final) for willful failure to file an income tax return demonstrates the practitioner's "unfitness to practice law" within the meaning of Rule 7.1.[18] It calls for disciplinary measures in the interest of maintaining the integrity of and confidence in the legal profession.[19] A lawyer's disregard of federal tax laws manifests a want of fidelity to the system of lawful government which a lawyer is sworn to uphold.[20] "By willfully failing to file ... tax returns, a lawyer appears to the public to be placing himself above the law." [21] It matters not that the lawyer's offense (of failure to file a tax return) is characterized either as a misdemeanor or a felony. The misconduct clearly does not comport with accepted professional standards because it is likely to undermine public confidence in and perception of the legal profession as a community of law-abiding practitioners.[22]

The only question that remains for us to decide is hence the appropriate disciplinary sanction, if any, to be meted out in this case.[23]

15. The Bar's and Livshee's Joint Brief in Support of the Trial Panel Report and Recommendation at page 2.

16. The adjective "forensic" means something that relates to courts of judicature. Black's Law Dictionary, p. 583 (5th Ed.1979); Webster's Third New International Dictionary, p. 889 (1961).

17. *Bonner v. Oklahoma Rock Corp.*, Okl., 863 P.2d 1176, 1181 (1993); *State ex rel. Trimble v. City of Moore*, Okl, 818 P.2d 889, 894 n. 14 (1991); *Bill Hodges Truck Co. v. Gillum*, Okl., 774 P.2d 1063, 1068 (1989); *Nanonka v. Hoskins*, Okl., 645 P.2d 507 (1982); *City of Lawton v. Lewis*, Okl., 566 P.2d 133, 134 (1977); *Yamie v. Willmott*, 184 Okl. 382, 88 P.2d 325, 326 (1939).

18. For the text of Rule 7.1, see *supra* note 5.

19. *Committee on Professional Ethics v. Bromwell*, 221 N.W.2d 777, 779–780 (Iowa 1974); *St. Pierre's Case*, 304 A.2d 88, 89 (N.H.1973); *In re Schub*, 296 N.E.2d 738, 740 (Ill.1973); *In re Calhoun*, 245 A.2d 560 (Vt.1968).

20. *State v. Arneson*, 36 Wis.2d 618, 153 N.W.2d 497, 500 (1967); *Calhoun, supra* note 19 at 561; *Ohio State Bar Assn. v. Hart*, 15 Ohio St.2d 97, 238 N.E.2d 560, 561 (1968), *cert. den.* 393 U.S. 933, 89 S.Ct. 292, 21 L.Ed.2d 269 (1968); *In re Knapp*, 127 Vt. 222, 245 A.2d 561 (1968).

21. *Attorney Grievance Com'n of Maryland v. Walman*, 280 Md. 453, 374 A.2d 354, 361 (App. 1977); *Cleveland Bar Association v. Stein*, 29 Ohio St.2d 77, 278 N.E.2d 670, 673 (1972); *Calhoun, supra* note 19; Annot., "Federal Income Tax Conviction As Involving Moral Turpitude Warranting Disciplinary Action Against Attorney, 63 A.L.R.3d 476 (1975); Annot., "Federal Income Tax Conviction As Constituting Nonprofessional Misconduct Warranting Disciplinary Action Against Attorney", 63 A.L.R.3d 512 (1975).

22. *Schub, supra* note 19 at 740.

23. The extent of discipline administered for a lawyer's failure to file income tax returns varies considerably among other jurisdictions. In a number of cases the Supreme Court of New York, Appellate Division, imposed only a censure. *See, e.g., Matter of Wolk*, 61 A.D.2d 691,

## IV

## DISCIPLINE TO BE IMPOSED

The PRT considered several mitigating factors. (1) Livshee complied fully with this court's post-conviction order of interim suspension and with all other rules governing him while under suspension; (2) he has refrained from practicing law; (3) his offense of willful failure to file a tax return does not reveal any elements of "deception and dishonesty;" (4) Livshee readily admitted his wrongdoing; (5) at the time of his criminal omission Livshee did not have the money to pay the taxes then due the government; (6) the acts of which he stands convicted neither relate to his practice of law nor did they harm any of his clients or other individuals; (7) at the time of the PRT hearing Livshee had filed all his tax returns; (8) while he then owed in taxes between $50,000 and $55,000, he was making arrangements for a payout.

The parties urge this court to adopt the PRT's recommendation by suspending Livshee from the practice of law for 60 days, to run from the date of this court's interim post-conviction order of September 13, 1993, and by requiring him to pay all costs of this proceeding.

The responsibility cast on this court when exercising disciplinary jurisdiction is not to punish offensive conduct but rather to inquire into a lawyer's continued fitness. This must be done with a view towards safeguarding the interests of the public and those of the courts as well as of the legal profession.[24]

Disciplinary sanctions not only serve to deter an offending lawyer from committing similar acts in the future, but also operate as a restraining influence upon others.[25] The sanction we impose today amply meets these policy goals.[26]

■ A lawyer's license is a certificate of professional fitness to deal with the public as a legal practitioner. Public confidence in every approved legal practitioner is essential to the proper functioning of the profession. A lawyer's willful failure to file an income tax return is a breach of professional responsibility that tends to discredit the legal profession in the eyes of the public. The respondent has breached his obligation to uphold, with strict fidelity, the high standards imposed upon the bar.

On its full *de novo* consideration of the entire record, the court holds that Livshee's conviction demonstrates his unfitness to practice law within the meaning of Rule 7.1 and warrants imposition of discipline. The suspension under which Livshee stands today has extended for a period we deem long enough to constitute an adequate disciplinary sanction for the misconduct of which he was convicted. The period of suspension, which began when the court issued its interim order of September 13, 1993, will end when this pronouncement becomes final and effective. Our opinion herein shall be effective, so as to allow respondent's resumption of law practice, when the costs of this proceeding ($469.40) have been paid and its remittance documented by the Bar's filing of a receipt in this court.[27]

403 N.Y.S.2d 737 (1978), where it appeared that the respondent had an otherwise satisfactory record during 23 years of practice; that he had been beset by personal problems and there was no element of dishonesty connected with the offense. In other cases a *three-month suspension (In re Romas,* 71 A.D.2d 969, 419 N.Y.S.2d 793 (1979)) and one-year suspension (*In re Landis,* 21 A.D.2d 488, 251 N.Y.S.2d 139 (1964)) have been imposed. Courts in some states have imposed a public reprimand, *Cincinnati Bar Ass'n v. Leroux,* 16 Ohio St.2d 10, 242 N.E.2d 347 (1968); a two-month suspension, *In re Ford's Case,* 102 N.H. 24, 149 A.2d 863 (1959); an indefinite suspension, *In re Ray,* 264 S.E.2d 292, 214 S.E.2d 328 (1975); and a six-month suspension, *Committee on Professional Ethics and Conduct of the Iowa State Bar Association v. Louden,* 209 N.W.2d 359 (Iowa 1973).

24. *State ex rel. Okl. Bar Assn v. Donnelly,* Okl., 848 P.2d 543, 546 (1992); *State ex rel. Okl. Bar Ass'n v. Colston,* Okl., 777 P.2d 920, 925 (1989); *State ex rel. Okl. Bar Ass'n v. Moss,* Okl., 682 P.2d 205, 207 (1983); *State ex rel. Okl. Bar Ass'n v. Harlton,* Okl., 669 P.2d 774, 777 (1983); *Raskin, supra* note 11 at 267.

25. *State ex rel. Okl. Bar Ass'n v. Hall,* Okl., 567 P.2d 975, 978 (1977).

26. *Raskin, supra* note 11 at 267.

27. Payment of costs in this case shall be spread of record by the filing of the Bar's receipt *in this court.*

Respondent is accordingly ordered sanctioned by a suspension from the practice of law which is to extend *from the date of this court's post-conviction order of interim suspension to the effective date of this pronouncement* and by imposition of costs.

HODGES, C.J., LAVENDER, V.C.J., and HARGRAVE, ALMA WILSON, KAUGER, SUMMERS and WATT, JJ., concur.